**GEORGIA ASSOCIATION OF REALTORS, INC., a Georgia Corporation, Murray Calhoun, III, Peggy F. Sikes, Robert T. Flournoy, and Billy M. Bell, Plaintiffs,**

v.

**ALABAMA REAL ESTATE COMMISSION, James M. Bagwell, Leon Crawford, Ben L. Haley, Martha B. Harlan, Frank Parquette, Sr., William M. Towns, William Trick and Leonard C. Wyatt, Defendants.**

Civ. A. No. 90–H–366–N.

United States District Court, M.D. Alabama, N.D.

July 25, 1990.

As Amended Aug. 13 and Aug. 16, 1990.

Smith, Gambrell & Russell, Harold L. Russell and Andrea Doneff, Atlanta, Ga., and Balch & Bingham, M. Roland Nachman, Jr., Montgomery, Ala., for plaintiffs.

Perry O. Hooper, Sr., Montgomery, Ala., for defendants.

## MEMORANDUM OPINION

HOBBS, Chief Judge.

Plaintiffs, the Georgia Association of Realtors, Inc., Calhoun, Sikes, Flournoy and Bell, filed a complaint and motion for preliminary and permanent injunction on April 4, 1990, requesting that the Court enjoin defendants the Alabama Real Estate Commission and the individual commissioners, from enforcing certain statutes and regulations on the basis that these provisions violate the Privileges and Immunities Clause, U.S. Const. art. IV, § 2, cl. 1, the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, and the Settlement Agreement entered into between the parties in *Georgia Association of Realtors, Inc. v. Alabama Real Estate Commission,* No. 87–T–335–N (Aug. 21, 1987).

Defendants filed an answer on April 18, 1990 in which they denied that the challenged statutes and regulations violate either the settlement agreement entered in Civil Action No. 87–T–335–N or the United States Constitution.

A consolidated hearing on plaintiffs' request for a preliminary injunction and trial on the merits was held on June 21, 1990. Based on the evidence submitted and arguments presented, the Court finds that the challenged statutes and regulations do not violate either the settlement agreement entered in Civil Action No. 87–T–335–N or the Privileges and Immunities Clause. However, the Court determines that the requirement that an applicant for a broker's

license must complete fifteen semester credit hours of approved real estate courses if the applicant has not held a salesman's license in Alabama for twenty-four of the thirty-six months preceding the application, the requirement that an applicant for a salesman's license must complete an eight-week course taught within the State of Alabama, the requirement that an applicant for a broker's license must maintain a "place of business" in Alabama, the requirement that a salesman must place his or her license with a broker who maintains a "place of business" in Alabama and the requirement that a "qualifying broker" maintain a "place of business" in Alabama violate the Commerce Clause. Accordingly, the Court determines that plaintiffs' motion for permanent injunction is due to be granted and these requirements are due to be declared unconstitutional. A separate judgment shall be entered in accordance with this memorandum opinion.

## I. JURISDICTION AND VENUE

Plaintiffs bring this cause of action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201, alleging violations of the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343. Venue is proper in this division and district pursuant to 28 U.S.C. § 1391(b).

## II. FACTS

Plaintiff Georgia Association of Realtors, Inc. (GAR) is a Georgia corporation which acts as a trade organization whose members include persons licensed by the State of Georgia as real estate salespersons and real estate brokers. Plaintiff Calhoun is a Georgia resident licensed as a real estate broker in Alabama. Plaintiffs Sikes and Bell are Georgia residents who are licensed as real estate salesmen in Alabama and who are seeking Alabama real estate broker licenses. Plaintiff Flournoy is a Georgia resident who would seek an Alabama real estate broker's license but for the requirement that he either complete fifteen semester credit hours of education or hold an Alabama real estate salesman's license for two years prior to being eligible to take the Alabama real estate broker's examina-

tion. Plaintiff Flournoy has been licensed as a broker in Georgia for fifteen years.

In 1985, Alabama amended the Alabama Code so as to require applicants for real estate licenses to be residents of Alabama. In 1987, plaintiff GAR and several named individual plaintiffs brought suit against the same defendants as are in this suit challenging Alabama's residency requirement for real estate licensees. Several months after the filing of the prior suit the parties entered into a consent decree declaring the residency requirements found in Ala.Code §§ 34–27–32(a)(5), 34–27–3(a) and 34–27–35(i)(2) (1985) to be in violation of the Privileges and Immunities Clause, U.S. Const. art. IV, § 2, cl. 1. *See Georgia Association of Realtors v. Alabama Real Estate Commission*, 678 F.Supp. 854, 855 (M.D.Ala.1987). Defendants also agreed to process applications for real estate licenses without regard to the residency of the applicant. *Id.* at 855 n. 1.

In 1988 and 1989 the Alabama Legislature amended the Alabama Code to include the following provisions: Section 34–27–32(e) requires an applicant for a company or broker license to "maintain a place of business" in Alabama; Sections 34–27–32(b) and (c) require that an applicant for a broker's license have an active real estate salesperson's license in Alabama for at least twenty-four of the thirty-six months immediately preceding the date of application or to complete at least fifteen semester hours in real estate courses approved by the Commission; Section 34–27–33(b) requires that salespersons and brokers secure a qualifying broker with whom to place their licenses. The qualifying broker must be licensed in Alabama and must maintain a place of business in the state of Alabama. *See* §§ 34–27–33(b) and 34–27–34(a)(1). Section 34–27–2 and Rule 790–X–2–.07 of the Alabama Real Estate Commission Administrative Procedures Code define "place of business" and require that a "licensed broker living in a rural area of this state who operates from his home … must have a separate business telephone, separate entrance, and be properly identified as a real estate office." Ala.Code

§ 34–27–2(a)(14)a. The Code and Rule go on to state that:

[A]ll licensees located within the city limits and/or police jurisdiction of a municipality must operate from a separate office located in the city limits and/or police jurisdiction. Such office must have a business telephone, must meet all other regulations of the real estate commission, and must be properly identified as a real estate office. Hardship cases may be subject to waiver of this regulation upon application and approval by the Commission. Ala.Code. § 34–27–2(a)(14)b.

The Alabama Code also requires that all business records and files be kept at the place of business in Alabama. Ala.Code § 34–27–2(a)(14)c. However, defendants construe this last requirement as pertaining to business records of transactions involving real estate located in Alabama only.

Defendants monitor the activities of real estate brokers and salesmen by two methods. First, defendants investigate any direct complaints lodged against a real estate broker or salesman by a consumer. Second, defendants conduct "spot checks" of randomly selected real estate offices throughout the state. These spot checks are conducted without prior notice and are designed to monitor a realtor's compliance with record-keeping and other requirements. Philip Lasater, the Executive Director of defendant Alabama Real Estate Commission, testified at trial that it was not practical, given the Commissions' limited resources, to send an auditor out of state to conduct inspections. Plaintiffs put on the deposition testimony of Charles Clark, the Commissioner for the Georgia Real Estate Commission, in which the witness stated his opinion that the requirements for maintaining an office, telephone and business records were not necessary to conduct regulatory or disciplinary actions. Clark based his opinion on the fact that the State of Georgia has licensed non-resident real estate salesmen and brokers since 1973, and has taken only four disciplinary

actions against non-residents during that time.

As of the date of the hearing in this cause, there are four hundred twenty non-resident persons licensed to sell real estate in Alabama, representing thirty-four states and one foreign country. Of these, three hundred thirty-six hold inactive licenses.[1] Of the thirty non-resident brokers actively licensed in Alabama, half live within twenty miles of Alabama. Of the eighty-four active licensees, seventy come from states which border Alabama. Of the three hundred thirty-six inactive licensees, one hundred eighty-two come from bordering states. Defendants presented evidence that at least one non-resident broker had met the fifteen semester credit hour requirement. Plaintiffs presented the testimony of plaintiff Flournoy who stated the education requirement precluded him from applying for an Alabama broker's license.

The parties presented evidence of both compliance and non-compliance with the in-state office requirement. The one broker from California maintains an office in Montgomery, Alabama. Another broker who is a Georgia resident also maintains an Alabama office. Plaintiff Calhoun maintains a "business address" in Alabama which consists of a room rented from a carpet outlet. This room does not have a telephone and is not identified as a real estate office. Plaintiff Calhoun testified that it would cost him at least twenty thousand dollars a year or more to maintain an office in Alabama from which he could transact business. He also estimated that he could generate up to twenty-five thousand dollars in commissions, which represents five hundred thousand dollars in sales, from Alabama transactions annually. Defendants have noticed plaintiff Calhoun of their intent to set a hearing date to determine whether to revoke plaintiff's broker's license for failure to have a telephone and identifying signs at his office in Alabama. Plaintiff Calhoun's main place of business is in Columbus, Georgia and is

---

**1.** It is not clear whether all non-residents who hold inactive licenses obtained such licenses after 1987, since under former 34–27–32(a)(5) (1985), a person who moved away from Alabama could place his or her license on inactive status and would not lose the license by virtue of becoming a non-resident. The residency requirement was only in effect from 1985 to 1987.

located within five miles of the Alabama border.

## ANALYSIS

Plaintiffs claim the challenged statutes and regulations violate the settlement agreement entered into between the parties in a prior suit, discriminate against non-residents and unduly burden interstate commerce. Defendants respond that the prior suit only concerned the constitutionality of Alabama's residency requirements for real estate licenses and does not preclude defendants from otherwise regulating such licensees. Defendants contend that the statutes and regulations objected to by plaintiffs make no mention of resident status and apply equally to residents and non-residents alike. Defendants maintain that real estate sales are purely local transactions and do not involve interstate commerce. Alternatively, defendants argue that, even if real estate sales can be deemed a part of interstate commerce, the regulations at issue serve a compelling state interest and do not place an undue burden on interstate commerce.

### A. *Prior Litigation*

The Court finds that the statutes enacted by the Alabama Legislature and the regulations promulgated by defendants do not violate the consent decree entered in Civil Action No. 87–T–335–N. The consent decree specifically provided a declaration that:

(1) The following portion of § 34–27–32(a)(5) of the Code of Alabama is unconstitutional: "who is a resident of Alabama."

(2) The following portion of § 34–27–3(a) of the Code of Alabama is unconstitutional: "It shall be unlawful for any person, partnership or corporation who is not a resident of Alabama to perform any of the acts described in § 34–27–30; except that."

(3) Section 34–27–35(i)(2) of the Code of Alabama is unconstitutional. It states: "The active license of any licensee who changes residence from Alabama to another state or country shall become inactive immediately upon the change of residence. The licensee must submit his license certificate to the commission within 20 days of the change of residence."

The challenged provisions do not reinstate the residency requirements which were declared unconstitutional in the prior proceeding. Accordingly, the Court cannot say that the challenged provisions violate the consent decree. Although the challenged statutes and rules apparently will discourage non-residents from seeking Alabama licenses, the extent to which Alabama may impose such regulations is a murky area of the law. Defendants are free to probe the constitutional limits of their power to impose regulations, requirements and restrictions which may differentially affect residents and non-residents. Although the Court is of the opinion that these types of laws are counter-productive and have a tendency to place unwise restrictions on interstate trade, the issue presented is not the Court's idea of the relative wisdom of such laws, but rather whether they violate the Constitution. It is that issue to which the Court now turns.

### B. *Privileges and Immunities Clause*

Plaintiffs properly recognize that the United States Supreme Court, in *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985), set out the standard for deciding whether a statute violates the Privileges and Immunities Clause. The test is whether "... (i) there is a substantial reason for the difference in treatment; and (ii) [whether] the discrimination practiced against non-residents bears a substantial relationship to the State's objective." *Id.* at 284, 105 S.Ct. at 1278. Plaintiffs argue that the statutes and regulations unduly burden non-residents, and therefore violate the Privileges and Immunities Clause. Defendants respond that the statutes and regulations apply to residents and non-residents alike, and therefore are not discriminatory.

The Court has carefully reviewed *Piper, supra, Supreme Court of Virginia v. Friedman*, 487 U.S. 59, 108 S.Ct. 2260, 101 L.Ed.2d 56 (1988) and *Frazier v. Heebe*, 482 U.S. 641, 107 S.Ct. 2607, 96 L.Ed.2d 557 (1987). The Court notes that all of those cases dealt with regulations which imposed

different requirements on non-residents than were required of residents. Similarly, all of the cases of which the Court is aware in which this clause has been construed have been cases where states enacted statutes that overtly distinguished between residents and non-residents. *See, e.g., Hicklin v. Orbeck,* 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978) (resident hiring preference unconstitutional); *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) (access to abortions limited by residency unconstitutional); *Toomer v. Whitsell,* 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948) (higher fees for nonresident shrimp boats unconstitutional); *Ward v. Maryland,* 12 Wall. 418, 20 L.Ed. 449 (1871) (higher fees for nonresidents to trade in goods manufactured out-of-state unconstitutional). As noted in *Piper, supra,* 470 U.S. at 279 n. 7, 105 S.Ct. at 1276 n. 7, the Privileges and Immunities Clause is derived from Article IV of the Articles of Confederation, which provided that:

> The better to secure and perpetuate mutual friendship and intercourse among the people of the different States in this Union, the free inhabitants of each of these States ... shall be entitled to all privileges and immunities of free citizens in the several States; and the people of each State shall have free ingress and regress to and from any other State, and shall enjoy therein all the privileges and immunities of trade and commerce, *subject to the same duties, impositions and restrictions as the inhabitants thereof* ..."

(Emphasis added). As the Court finds that residents and non-residents are "subject to the same duties, impositions and restrictions" under the challenged statutes, the Court concludes that they do not violate the Privileges and Immunities Clause. The Court acknowledges that such duties, impositions and restrictions may have a differential effect on non-residents than on residents. Given its history, it would seem an improvident construction of the Privileges and Immunities Clause to *require* the State of Alabama to treat non-residents differently than residents in order to account for possible differential *effects* of license requirements based on an applicant's residency.

## C. *Commerce Clause*

■ Plaintiffs contend that the in-state office and education requirements unduly burden interstate commerce. Defendants respond first by noting that real estate is a uniquely local concern, and question whether the Commerce Clause applies to realtor licensing. Defendants argue that, if the Commerce Clause does apply, defendants have a compelling interest in the office requirement in that the "spot checks" which they perform promote compliance with record-keeping and other requirements since no licensee knows when he or she may be audited. Furthermore, defendants contend that the education requirement is permissible since states have "broad power to establish standards for licensing practitioners and regulating the practice of professions." *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572 (1975).

It is interesting that defendants cite *Goldfarb* and yet question whether the Commerce Clause applies to the instant litigation. *Goldfarb* involved a couple who sought to purchase a home in the State of Virginia. Such purchase required a title examination, which only a member of the Virginia State Bar could legally perform. The Virginia State Bar published a price schedule for performing title searches, and the couple could not find any attorney who would perform the service for less than the scheduled fee. The couple brought an antitrust action under the Sherman Act. In holding that the couple could maintain such an action, the Supreme Court noted that a significant amount of money comes from out-of-state to purchase realty in-state and therefore a purchase of realty is within interstate commerce. *Goldfarb, supra,* 421 U.S. at 785, 95 S.Ct. at 2012. The Court also held that a title search is a "service" performed in exchange for a fee, and as such is "commerce." *Id.* at 787–788, 95 S.Ct. at 2013. This Court can find no significant difference between the facts of *Goldfarb* and the present litigation insofar as determining whether the statutes in

this suit are subject to the commands of the Commerce Clause. Accordingly, the Court finds that the challenged regulations must comport with the Commerce Clause.

Plaintiffs accurately state that the test for whether a statutory provision or administrative rule violates the Commerce Clause is to be found in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970), which states:

Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.

This basic rule has been stated in various ways by the Supreme Court. *See Southern Pacific Co. v. Arizona*, 325 U.S. 761, 767, 65 S.Ct. 1515, 1519, 89 L.Ed. 1915 (1945) and cases cited therein. At the core of this rule is the idea that regulations which affect interstate commerce are more likely to represent legitimate state interests where the burdens imposed by such regulations equally affect intrastate commerce. *See, for example, South Carolina State Highway Department v. Barnwell Brothers, Inc.*, 303 U.S. 177, 185 n. 2, 58 S.Ct. 510, 513 n. 2, 82 L.Ed. 734 (1938). Plaintiffs' main argument against the in-state office requirement is that it discriminates against those realtors who have offices close to the Alabama border and who would be required to maintain duplicate offices or undertake the expense and inconvenience of moving their office in order to comply with the in-state office requirement. As the court found in *Underhill Assoc. v. Coleman*, 504 F.Supp. 1147 (E.D. Va.1981), the cost of maintaining an in-state office on an out-of-state business imposes a considerable burden on interstate commerce. The burden can withstand commerce clause challenge "only if it effectively promotes legitimate local interests which cannot be served by less burdensome or discriminatory measures." Defendants contend that there is a valid state interest in having records readily available to enable the state regulatory agency to do spot-checks, in addition to investigating consumer complaints.

The Court notes that whether an in-state office requirement violates the Commerce Clause has been addressed in at least two cases. In *Underhill Associates, supra,* a federal district court found that a Virginia administrative rule which required non-resident stock brokers to maintain an in-state office violated the Commerce Clause. The court found that such requirement placed an undue burden on non-resident brokers and concluded that neither the proffered state interest in providing consumers with "a place to go" nor more ready access of the state regulatory agency to records, afforded an adequate basis for such a rule. *Id.* at 1152. The Massachusetts Supreme Judicial Court in *Commonwealth v. Allied Bond and Collection Agency*, 394 Mass. 608, 476 N.E.2d 955 appeal dismissed 474 U.S. 991, 106 S.Ct. 401, 88 L.Ed.2d 353 (1985) (dismissing appeal for lack of a substantial federal question) upheld an in-state office requirement against a Commerce Clause challenge. In *Allied Bond,* the State of Massachusetts enacted a statute which required all debt collection agencies to maintain an office in Massachusetts which contained records of Massachusetts transactions and which would be open for inspection at designated times and days. The Massachusetts Supreme Judicial Court upheld the requirement on the basis that the state had a valid interest in auditing such records, the cost of maintaining such an office would not be excessive, and that there was no requirement that a debt collection agency transact business from such an office. The court noted that a requirement that a debt collection agency conduct business from an in-state office would probably be unconstitutional.

As in the case of *Allied Bond, supra,* the Court finds that the State of Alabama has a legitimate interest in conducting random unannounced audits of a realtor's records. A requirement that a broker maintain copies of records in the State of Alabama which would be accessible to defendants would probably be constitutionally sound. However, the challenged statutes do more than require a broker to maintain an office and records in Alabama, they require a broker to maintain a "place

of business" in Alabama. Ala.Code § 34–27–32(e). A "place of business" is defined as an office from which a licensee "operates." Ala.Code § 34–27–2(a)(14)c. The state's interest in having access to records can be served by less burdensome or discriminatory measures than requiring the broker to maintain an Alabama "place of business."

The Supreme Court has made it clear that a statute requiring business operations to be performed in the home state which could be performed more efficiently elsewhere is "virtually *per se* illegal." *Pike v. Bruce Church, Inc.*, 397 U.S. at 145, 90 S.Ct. at 849.[2] As it appears that Alabama could impose less onerous requirements which could adequately protect its legitimate interests, the Court finds the in-state "place of business" requirements set forth in Ala.Code §§ 34–27–32(e), 34–27–33(b) and 34–27–34(a)(1) violate the Commerce Clause.

■ Plaintiffs also challenge Ala.Code § 34–27–32(b) and (c) as violative of the Commerce Clause. These subparts provide that a person desiring to be a real estate salesman in Alabama must furnish, among other things, proof that he has successfully completed a course in real estate approved by the commission, which will be a minimum of eight weeks in length, which will meet at least once a week, and which will contain a minimum of forty-five classroom hours. This course must be taught by an instructor who has had approval of the Alabama real estate commission prior to an approved pre-license course and shall be taught within the state of Alabama. Ala. Code § 34–27–32(c). In order to apply for a broker's license, the applicant must furnish the same proof as for a salesman's license, and in addition must submit proof that he has had an active real estate salesman's license in Alabama for at least twenty-four months of the thirty-six-month period immediately preceding the date of application. In lieu of the above requirements for a broker's license, the applicant may furnish proof that he has successfully completed at least fifteen semester hours or its equivalent in real estate courses approved by the commission. Ala.Code § 34–27–32(b). This statute became effective as of April 7, 1988. Ala.Code § 34–27–34(a) further provides that "In addition to other requirements of this chapter, every applicant for a broker's or salesman's license shall submit to a reasonable examination." Plaintiffs argue that the requirement that an applicant for a broker's license either hold a salesman's license in Alabama for a minimum of two years or that the applicant complete fifteen semester credit hours of real estate courses is prohibitive in that most states only require sixty to ninety classroom hours in order to obtain a broker's license. Clark depo. at 49. The Court takes judicial notice that fifteen semester hours is roughly the equivalent of two hundred twenty-five classroom hours.[3] In addition to the two years' salesman's experience, Alabama only requires forty-five classroom hours of education. Plaintiffs Bell and Flournoy testified that they would apply for an Alabama broker's license but for the education or Alabama salesman experience requirement.

**2.** The Court notes that in *Frazier v. Heebe*, 482 U.S. 641, 107 S.Ct. 2607, 96 L.Ed.2d 557 (1987), the Supreme Court was considering a rule of a federal district court which required a continuous in-state residence or maintenance of an in-state law office for eligibility to practice law in the district court. The Supreme Court, pursuant to its supervisory authority over federal district courts, held that the district court was not empowered to require members of the state bar to also maintain an in-state office. The Supreme Court found such a requirement to be "unnecessary and irrational." The Supreme Court was not considering such a requirement under the Commerce Clause, but its language that such a requirement for lawyers is "unneces-sary and irrational" suggests that such a requirement for realtors is similarly lacking in rationality. In performing the balancing test to determine whether the burden on interstate commerce is excessive in relation to the putative local benefit, it is difficult to adequately justify such a burden where the requirement has been characterized by the Supreme Court as both unnecessary and irrational.

**3.** A semester is typically fifteen weeks and one semester hour usually requires one in-class hour per week. Accordingly, fifteen hours a week for fifteen weeks would equal two hundred twenty-five total classroom hours.

The Court notes that before the 1988 amendment, § 34–27–34(b) formerly provided:

> (b) A person desiring to be a real estate broker in this state must apply for a broker's license on a form prescribed by the commission. Along with the application, he must submit:
>
>> (1) Proof that he has had an active real estate broker's or salesman's license in any state for at least 24 months of the 36 month period immediately preceding the date of application.
>>
>> \* \* \* \* \* \*
>>
>> (3) Proof that he has completed a course in real estate approved by the commission, and
>>
>> \* \* \* \* \* \*
>
> In lieu of the requirements of subdivisions (1) and (3) hereof, the applicant may furnish proof that he has successfully completed at least 15 semester hours or its equivalent in real estate courses approved by the commission.

Ala.Code § 34–27–32(b) (1985). This section was in effect, therefore, when plaintiffs brought Civil Action No. 87–T–335–N. Plaintiffs did not object to the fifteen semester credit hour requirement at that time, presumably because such requirement could be avoided by having experience in any other state. As noted previously, most other states only require ninety hours or less of classroom experience in order to obtain a realtor's license. However, the 1988 amendment effectively bars access to Alabama licensing on the basis of experience except to those who obtain such experience in Alabama.

The Court determines that the fifteen semester credit hour requirement poses a substantial hurdle for non-residents who wish to obtain an Alabama license. Also, the requirement for obtaining a salesman's license that an approved real estate course be taught in Alabama presents a burden to non-residents. The Court recognizes that states have a legitimate and substantial interest in establishing criteria for the licensing and practice of professions in Alabama, *see Goldfarb, supra,* and that the state may impose reasonable examination and education requirements for the licens-

ing of professionals. However, such a generalized interest should not act as a trump card to shield requirements that only marginally advance a state's interest in ensuring competence in a given profession. Defendants offer no explanation for the change in the experience requirement, do not offer evidence that problems have arisen because of an absence of the new requirements, do not state that experience garnered elsewhere is inadequate for the sale of real estate in Alabama, and otherwise make no effort to justify the burden imposed by the 1988 amendment. Accordingly, the Court finds that the fifteen semester credit hour requirement, in conjunction with the experience and education-in-Alabama limitation, unduly burdens interstate commerce in violation of the Commerce Clause.

### *Attorneys' Fees*

■ Plaintiffs have requested an award of attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 based on the deprivation of their civil rights. As the Court finds that plaintiffs are the prevailing party only on their claim asserted under the Commerce Clause, the Court is of the opinion that plaintiffs are not entitled to attorneys' fees under § 1988 as a Commerce Clause violation is not actionable under § 1983. *J & J Anderson, Inc. v. Town of Erie,* 767 F.2d 1469 (10th Cir.1985); *Consolidated Freightways Corporation of Delaware v. Kassel,* 730 F.2d 1139 (8th Cir.1984); *Conner v. Rivers,* 25 F.Supp. 937 (N.D.Ga. 1938), *aff'd* 305 U.S. 576, 59 S.Ct. 359, 83 L.Ed. 363 (1939). However, since the parties have not addressed this issue, plaintiffs may submit additional authority if they wish to pursue their claim for attorneys' fees.

### CONCLUSION

Although the Court finds that the challenged provisions violate neither the consent judgment entered in Civil Action No. 87–T–335–N nor the Privileges and Immunities Clause, the Court finds Ala.Code §§ 34–27–32(b), (c) and (e), 34–27–33(b) and 34–27–34(a)(1) to be unconstitutional in that

they violate the Commerce Clause of the United States Constitution.

## JUDGMENT

Amended August 13 and
August 16, 1990.

In accordance with the attached Memorandum Opinion, it is ORDERED, ADJUDGED and DECREED that:

(1) It is the DECLARATION of this Court that:

(A) The following portions of *Sections 34–27–32(b) and (c)* of the Code of Alabama are unconstitutional:

"(b) ... (1) Proof that he has had an active real estate salesman's license in Alabama for at least 24 months of the 36 month period immediately preceding the date of application.

\* \* \* \* \* \*

(3) ... This course must be taught by an instructor who has had approval of the Alabama real estate commission prior to an approved pre-license course and shall be taught within the state of Alabama.

\* \* \* \* \* \*

In lieu of the requirements of subdivisions (1) and (3) hereof, the applicant may furnish proof that he has successfully completed at least 15 semester hours or its equivalent in real estate courses approved by the commission.

(c) ... (2) ... This course must be taught by an instructor who has had approval of the Alabama real estate commission prior to an approved pre-license course and shall be taught within the state of Alabama...."

(B) The following portion of *Section 34–27–32(e)* of the Code of Alabama is unconstitutional: "in the State of Alabama."

(C) The following portion of *Section 34–27–33(b)* of the Code of Alabama is unconstitutional: "in the State of Alabama."

(D) The following portion of *Section 34–27–34(a)(1)* of the Code of Alabama is unconstitutional: "in Alabama."

(2) Defendants and their agents, employees, servants, assigns and successors in office are hereby permanently ENJOINED from enforcing the foregoing provisions on the basis that they violate the Commerce Clause of the United States Constitution. Said injunction extends to the disciplinary proceedings instituted against plaintiff Calhoun on October 2, 1989.

(3) Plaintiffs' request for attorneys' fees is DENIED.

It is further ORDERED that the Clerk of this Court issue a Writ of Injunction to the named defendants herein, and that the United States Marshal for this District personally serve the Writ on defendants along with copies of this Judgment and the attached Memorandum Opinion.

It is further ORDERED that the court costs incurred in this proceeding be taxed against defendants, for which execution may issue.

## ORDER

Filed August 16, 1990.

Defendants' motion pursuant to Rule 60 is GRANTED insofar as the Court amends its Judgment with respect to Section 37–27–34(a)(1), as the prior judgment struck more of the statute than was necessary or intended. An amended judgment is entered contemporaneously with this order to narrow the Court's ruling.

The balance of defendants' motion is DENIED. The Court declines to amend its Judgment as to Section 34–27–32(b)(1) in that, if the Court were to strike only the phrase "in Alabama" from this subsection, persons who have held a broker (as opposed to salesman) license in another state for twenty-four of the thirty-six months preceding application would not qualify for taking the broker's examination in Alabama. This would create an irrational distinction and therefore the entire passage must be found unconstitutional.

With respect to Section 34–27–32(b)(3) and (c)(2), the Court is of the opinion that requiring a non-resident applicant to take a course which not only meets the requirements of the Alabama Real Estate Commission, but which also is "taught by an instructor who has had approval of the Alabama Real Estate Commission prior to an approved pre-license course" unduly bur-

dens interstate commerce. This passage necessarily means that *teachers* of real estate courses throughout the United States would be required to seek approval of the Alabama Real Estate Commission even where the Commission otherwise approves of the length and contents of the courses taught. The Court is of the opinion that there exists a less burdensome manner of ensuring that applicants have completed an appropriate course taught by qualified persons.

DONE and ORDERED.