95 F.3d 1156
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CODAR, INC., a California corporation, Plaintiff-Appellant
v.
STATE OF ARIZONA; Arizona State Banking Department,
Defendants-Appellees.
 No. 94-16902.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 14, 1996.
Decided Aug. 19, 1996.
 
 Before: HALL and BRUNETTI, Circuit Judges, and WEINER,* District Judge.
 MEMORANDUM**
 Plaintiff-appellant, Codar, Inc., a debt collection agency incorporated in California, brought suit seeking declaratory and injunctive relief from Arizona's licensing scheme, which requires out-of-state debt collectors to obtain an Arizona license before operating in the state. Codar appeals the district court's decision granting the defendants' Federal Rules of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim. The district court held that Codar did not state sufficient facts to maintain its claim that Arizona's statutory scheme violates the Commerce Clause of the United States Constitution.
 On appeal both sides argued numerous facts that are not in the record. However, when reviewing a Rule 12(b)(6) dismissal for failure to state a claim, our review is limited to the contents of the complaint. National Wildlife Federation v. Espy, 45 F.3d 1337, 1340 (9th Cir.1995). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Parks School of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir.1995). On the record before us, it does not appear beyond doubt that Codar can prove no set of facts that would entitle it to relief from Arizona's licensing statutes. As a result, we find that the district court erred in granting Arizona's motion to dismiss for failure to state a claim, and we remand this case to the district court for further proceedings.
 * The Commerce Clause of the United States Constitution grants to Congress the power to regulate commerce among the States. U.S. Const. Art I., § 8, cl. 3. Granting this power to Congress thereby limited the power of the States to regulate in such a way as to discriminate against interstate commerce. New Energy Co. v. Limbach, 486 U.S. 269, 273 (1988). The implication, then, is that States may not engage in "economic protectionism," which includes enacting regulations "designed to benefit in-state economic interests by burdening out-of-state competitors. Id. at 273-74.
 When determining whether a State enactment violates the Commerce Clause, the Supreme Court has distinguished between state statutes that affirmatively discriminate against interstate commerce, and those that only incidentally burden commerce. Maine v. Taylor, 477 U.S. 131, 138 (1986). A different analytical framework is used for each category: A statute in the first category--one that has been "shown to discriminate against interstate commerce 'either on its face or in practical effect' "--is generally struck down as per se invalid. Id. (quoting Hughes v. Oklahoma, 441 U.S. 322, 336 (1979)) (emphasis added); New Energy, 486 U.S. at 274. In such cases, the burden is on the State to demonstrate that the statute serves a legitimate local purpose that could not be served as well by a nondiscriminatory means. Maine, 477 U.S. at 138.
 On the other hand, statutes that apply evenhandedly to both in-state and out-of-state interests will be upheld so long as the State's interest is legitimate, and the burden on interstate commerce is not "clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970); Maine, 477 U.S. at 138. In these cases, the burden is on the party challenging the statute to establish that the burden on interstate commerce is clearly excessive in relation to the local benefits. Kleenwell Biohazard Waste v. Nelson, 48 F.3d 391, 399 (9th Cir.1995). The difficulty in the current case is in determining under which test the Arizona statutes should be analyzed.
 The Arizona statutes at issue set forth licensing requirements for collection agencies doing business in the state. Section 32-1023 lists the qualifications for license applicants: (1) U.S. citizenship, (2) resident of Arizona, (3) not convicted of a crime of moral turpitude, (4) not in financial default, and (5) not a former licensee whose license was suspended or revoked. Ariz.Rev.Stat.Ann. § 32-1023(A). For a corporate applicant "the individual in active management" of the corporation must meet those requirements. Ariz.Rev.Stat.Ann. § 32-1023(B).
 Alternatively, section 32-1024 delineates the licensing requirements for out-of-state collection agents. This section, however, applies only to those out-of-state applicants that already hold a "valid and subsisting license to operate a collection agency issued by another state or an agency thereof." Ariz.Rev.Stat.Ann. § 32-1024. If the applicant holds such a license, then Arizona will issue that applicant an Arizona license, if the following additional requirements are met: (1) the licensing state's licensing requirements must be substantially the same or equal to Arizona's, (2) the licensing state must extend reciprocity to Arizona's licensed collection agents, (3) the applicant must meet all financial requirements, and (4) the applicant must agree to maintain an in-state office. Each debt collector seeking to do business in Arizona must meet the requirements of either section 32-1023 or 32-1024. Thus, if a debt collection agency hails from a state that does not have an equivalent and reciprocal licensing scheme as required by section 32-1024, then it must instead meet the requirements of section 32-1023.
 Codar challenges two aspects of Arizona's licensing statutes. First, for agencies from states that do not license debt collectors, section 32-1023's residency requirement imposes an undue burden on these agencies' ability to do business in Arizona. Second, the in-state office requirement imposed under either section also unduly burdens out-of-state collection agencies, by significantly raising the cost of doing business in Arizona. The district court found that this statutory scheme applies evenhandedly to in-state and out-of-state applicants, and therefore, applied the Pike balancing test for statutes that only indirectly affect commerce. However, on the record before us, we cannot determine whether the residency and in-state office requirements evenhandedly apply to all applicants, with only incidental effect upon interstate commerce. As a result, we are unable to determine which test should appropriately be applied.
 The residency requirement does apply to every applicant for a license under section 32-1023, without regard to whether the applicant is an in-state or out-of-state firm. But the plain language of the statute requires that "the individual in active management" of a corporate firm must be a resident of Arizona. Taken literally, the practical effect of this language would be to exclude from Arizona all out-of-state firms from states that do not license collection agencies, unless the firm happens to be managed by an Arizona resident. This would be discrimination against out-of-state firms sufficient to find that the statute is per se unconstitutional, and must be struck down unless Arizona can demonstrate that is has a legitimate local purpose for its residency requirement, and that the purpose cannot be served by less discriminatory means.
 On the other hand, if Arizona interprets this section as requiring only that the firm must employ an Arizona resident to manage the in-state office, then this would apply evenhandedly to all applicants, in-state or out-of-state. In that case, any effect on interstate commerce would be incidental, and the Pike balancing test would apply--i.e., Codar must establish that any burden imposed is clearly excessive in relation to the putative local benefits of the residency requirement.
 Likewise, the in-state office requirement on its face applies equally to all applicants. Still, its practical effect may also be to impermissibly burden out-of-state firms. Once again, it is not clear which test we should apply.
 Several federal district courts and state courts have addressed the issue of whether an in-state office requirement violates the Commerce Clause. Two courts have upheld in-state office requirements for debt collectors against commerce clause challenges. Dun & Bradstreet, Inc. v. McEldowney, 564 F.Supp. 247 (D.Idaho 1983); Commonwealth v. Allied Bond and Collection Agency, 476 N.E.2d 955 (Mass.1985). But three other courts have struck down in-state office requirements for out-of-state licensees. Nutritional Support Services v. Miller, 830 F.Supp. 625 (N.D.Ga.1993) (striking down in-state office requirement for health care product sellers); Georgia Ass'n of Realtors v. Alabama Real Estate Comm'n, 748 F.Supp. 1487 (M.D.Ala.1990) (striking down in-state place of business requirement for realtors); Underhill Assoc., Inc. v. Coleman, 504 F.Supp. 1147 (E.D.Va.1981) (striking down in-state "regular place of business" requirement for stock brokers). Although these cases are split in the results they reach, most of them agree as to the proper analysis under the Commerce Clause.
 When determining which analytical framework applies to in-state office requirements, courts distinguish between statutes that require firms to maintain a regular place of business in the state, and those that simply require an in-state office for recordkeeping and audit purposes. This distinction is based upon the Supreme Court's observation in Pike that state statutes requiring business operations to be performed in-state that could be performed more efficiently elsewhere are virtually per se illegal. Pike, 397 U.S. at 145. Therefore, most courts would find that a "regular place of business" requirement is per se unconstitutional, and subject to higher level scrutiny, while an in-state office merely for holding records and allowing audits is permissible if it benefits are not clearly outweighed by the burden to out-of-state firms.[1] See Georgia Ass'n, 748 F.Supp. at 1493 (striking down as per se invalid a statute requiring brokers to maintain a "place of business" in-state, but noting that a "requirement that a broker maintain copies of records [in-state] which would be accessible to defendants would probably be constitutionally sound"); Underhill, 504 F.Supp. at 1151-52 (striking down as per se invalid a requirement that stock brokers have a regular place of business in-state); Nutritional Support, 830 F.Supp. at 628-29 (striking down as per se invalid a requirement that out-of-state suppliers maintain an in-state business location because "the cost to an out of state business of maintaining an in-state office imposes a considerable burden on interstate commerce"); Allied, 476 N.E.2d at 959 (applying the Pike balancing test and upholding a requirement that debt collectors maintain an in-state office for recordkeeping purposes because "[n]one of Allied's debt collection activities must be carried on in this State and any such requirement would probably be an undue burden on interstate commerce").
 Under this analysis, Arizona's in-state office requirement may be per se invalid. Arizona requires both in-state and out-of-state licensees to "maintain an office in this state for collection of claims." Ariz.Rev.Stat.Ann. §§ 32-1051(2) & 32-1024(4) (emphasis added). This implies that Arizona requires out-of-state debt collectors to perform normal business operations from their Arizona offices. If this is true, then this requirement must be struck down as per se unconstitutional, unless Arizona can demonstrate that it has a legitimate local purpose for requiring an in-state office, that cannot be served by less discriminatory means.
 On the other hand, if the statutes require no more than that the out-of-state licensee have an office in Arizona for recordkeeping and audit purposes, then the in-state office requirement must be analyzed under the balancing test. Under this analysis, the burden would be on Codar to prove that the burden on interstate commerce in general, see Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 127, 28 (1978) ("The [Commerce] Clause protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations."), is clearly excessive in relation to the benefit to Arizona of the in-state office requirement.
 In conclusion, Arizona's residency and in-state office requirements may be per se unconstitutional, depending upon how the State interprets its statutes. But considering only the information given in the complaint, and the record before this court, it is not clear what Arizona's requirements entail. Therefore, this issue may not be properly resolved upon a Rule 12(b)(6) motion to dismiss. As a result, we reverse the district court's dismissal of Codar's complaint, and remand so the court can decide this case on a more fully developed record at the summary judgment stage or at trial.
 II
 Codar also argues that Arizona's licensing statutes are preempted, at least in part, by the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692o. In particular, Codar claims that Arizona prevents out-of-state debt collectors from complying with section 1692g of the FDCPA.
 The FDCPA gives the states wide latitude to promulgate their own regulations of collection agency practices, "except to the extent that those laws are inconsistent with any provision of [the FDCPA], and then only to the extent of the inconsistency." 15 U.S.C. § 1692n. Section 1692g requires debt collectors to send a specific notice to the consumer within five days of the initial communication with the consumer in connection with collection of any debt. According to Codar, debtors often initiate the contact with the collection agency after the agency posts the collection notice to the debtor's credit report. If a debtor from Arizona initiates contact with the debt collector, Codar claims that Arizona's statutes prevent the collector from sending the notice required by the FDCPA, unless the collector was previously licensed by Arizona.
 Arizona argues that it is not strictly impossible for an out-of-state debt collector to comply with both Arizona and federal law--the debt collector must simply obtain an Arizona license before sending the notice required by the FDCPA. Still, if an agency that is not licensed in Arizona is contacted by a debtor who is an Arizona resident, then the agency may not send the notice required by the FDCPA because to do so would violate Arizona law. In this circumstance, the Arizona licensing statutes conflict with federal law. Thus, when an Arizona resident initiates the contact with a debt collector, then Arizona must not prevent an out-of-state debt collector from sending the required notice. To this extent, the Arizona statutes are preempted by the FDCPA.
 III
 In conclusion, we REVERSE the district court's grant of Arizona's Rule 12(b)(6) motion to dismiss, and REMAND for further proceedings. As to the preemption issue, we hold that Arizona's licensing statutes are preempted only to the extent that they prevent an out-of-state debt collector from sending the notice required by section 1692g of the FDCPA.
 REVERSED and REMANDED.
 
 
 
 *
 Hon. Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 One exception to this analysis is found in McEldowney. There the court determined that Idaho's in-state office requirement applied evenhandedly to all debt collectors. 564 F.Supp. at 262. As a result the court concluded that any effects on interstate commerce were incidental, and thus, the Pike balancing test applied. However, we do not find this analysis persuasive. The court merely concluded that Idaho's quite burdensome in-state office requirement applied evenhandedly because all debt collectors, in-state and out-of-state, were subject to the same requirement. The court failed, however, to consider whether the practical effect of this requirement may have been to unduly burden out-of-state firms. See, e.g., Nutritional Support, 830 F.Supp. at 628 ("while the [in-state office requirement] arguably may be facially neutral, at a minimum, the 'practical effect' of the policy is to discriminate against [out-of-state firms]"); Underhill, 504 F.Supp. at 1151 ("While the [in-state office] requirement is facially neutral, its obvious effect is prejudicial to out-of-state brokers, who must duplicate the expense of maintaining an office [in-state] in order to business with its residents.")