## K & A RADIOLOGIC TECHNOLOGY SERVICES, INC. and Diagnostic X–Ray Services, Inc., Plaintiffs,

v.

## Brian J. WING, individually and as Acting Commissioner of Social Services of the State of New York, Defendant.

### No. 96–CV–62 FJS GJD.

United States District Court, N.D. New York.

April 1, 1998.

MacKenzie Smith Lewis, Michell & Hughes, LLP, Peter D. Carmen, of counsel, Syracuse, NY, for Plaintiffs.

Dennis C. Vacco, Attorney General of the State of New York, Albany, NY, Karen Marcoux Mankes, Assistant Attorney General, of counsel, for Defendant.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, District Judge.

### Introduction

This action was brought pursuant to 42 U.S.C. § 1983 seeking to remedy a deprivation of the Plaintiffs' right to receive payments under the Medicaid Act, 42 U.S.C. § 1396a(a)(10) and (a)(37), and the Medicare Act, 42 U.S.C. § 1395ccc(a)(2)(A), for services rendered to Medicaid and Medicare recipients. The Plaintiffs, K & A Radiologic Technology Services, Inc. ("K & A") and Diagnostic X–Ray Services, Inc. ("Diagnostic X–Ray"), are two small businesses which provide, upon the request of a physician, portable x-ray and other services to individuals who reside in New York and who are Medicare and/or Medicaid recipients.[1] The Defendant, Brian J. Wing, is the Acting Commissioner of the Department of Social Services of the State of New York ("DSS"), which is the state agency in charge of the state Medicaid program.[2] The Plaintiffs are suing the Defendant both in his individual capacity and official capacity.

In their Second Amended Complaint, the Plaintiffs request that the Defendant be enjoined from withholding the 20% Medicare co-insurance payments for portable x-ray services rendered to Qualified Medicare Beneficiaries ("QMBs") and for an order directing the Defendant to reimburse all Medicare co-insurance amounts for past-rendered portable x-ray services to QMBs, as well as a declaration that such x-ray services are covered under the Medicaid Act.

### Statutory Background

This case concerns the interplay between the Medicare Act and the Medicaid Act, which set up two separate federal health care programs. The Medicare Act, 42 U.S.C. §§ 1395–1395ddd, was enacted to provide medical care to individuals sixty-five years of age or older and certain disabled individuals. All Medicare-eligible individuals are automatically enrolled in Medicare Part A.[3] Medicare Part B provides Medicare-eligible individuals with the option of receiving supplementary insurance for medical services Part A does not cover. To enroll in Part B, the individual must pay insurance premiums. *See id.* §§ 1395o –1395s. Once enrolled, the federal government pays 80% of the reasonable costs and charges for the service, and the individual patient pays the remaining 20% of the Medicare services they receive plus an annual deductible, or the "co-insurance" amount. *See* 42 U.S.C. § 1395cc(a)(2)(A).

The Medicaid Act, 42 U.S.C. §§ 1396–1396v, is a joint federal and state funded program which provides medical care for poor people, regardless of age. A state is not mandated to participate in the joint system. However, if the state chooses to participate, the state must adopt a Medicaid plan which meets enumerated minimum requirements. *See* 42 U.S.C. § 1396d.

Certain individuals meet the eligibility criteria for both Medicare and Medicaid, and thus are termed "dual eligibles." *See New York City Health & Hospitals Corp. v. Perales,* 954 F.2d 854, 856 (2d Cir.1992). Individuals who qualify for Medicare and who have incomes below the federal poverty line but are not poor enough to qualify for Medic-

---

**1.** K & A provides the services in the greater Syracuse, Utica, and Binghamton areas. Diagnostic X–Ray provides the services in the greater Buffalo and Western New York areas.

**2.** Effective October 1, 1996, the responsibility for overseeing the state Medicaid program was transferred to the Department of Health of the State of New York ("DOH"). Therefore, insofar as the official capacity suit is concerned, the Commissioner of the DOH is substituted in as the named Defendant in this action. *See* Fed. R.Civ.P. 25(d).

**3.** Part A provides for full payment of inpatient hospital services by the federal government.

aid are referred to as "pure QMBs." Both "pure QMBs" and "dual eligibles" are considered to be QMBs under the Medicare Act. *See* 42 U.S.C. § 1396d(p)(1). A state must make funds available for the 20% co-insurance amounts on behalf of such QMBs. *See* 42 U.S.C. § 1396a(a)(10)(E).

## Procedural Background

This lawsuit was filed on January 16, 1996. On February 14, 1996, the parties entered into a court-approved settlement ("Stipulation") in which the Defendant agreed to be permanently enjoined from withholding the 20% co-insurance payments for all portable x-ray services that the Plaintiffs would render to QMBs prospectively as of February 12, 1996. As a result of this settlement, only two claims remained: (a) the Plaintiffs' request for an order directing Defendant to reimburse them for the services rendered prior to February 12, 1996, both in his official and/or individual capacity, and (b) the Plaintiffs' request for an order declaring that portable x-ray services were covered under the Medicaid Act and that they are entitled to be enrolled as Medicaid providers. Presently before the Court are cross-motions for summary judgment on these remaining claims, and the Plaintiffs' renewed motion to hold the Defendant in contempt of the Stipulation.

## I. Cross–Motions for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is warranted if, when viewing the evidence submitted in the light most favorable to the non-moving party, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 457, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Commander Oil v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir.1993). A genuine issue of fact is one that could be decided in favor of either party. *See Anderson v. Liberty Lobby*, 477 U.S. 242,

250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where, as here, the Court is faced with cross-motions for summary judgment, a court is not obligated to grant either motion. Instead, each motion must be evaluated on its own merits, " 'taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.' " *Heublein Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993) (quoting *Schwabenbauer v. Board of Educ.*, 667 F.2d 305 (2d Cir.1981)).

## A. Reimbursement for Prior Services

As stated, the Plaintiffs seek payment from the Defendant in his official capacity and individual capacity for the portable x-ray services they rendered to QMBs during the period of 1988 to February 12, 1996.

### 1. Official Capacity

■ The Plaintiffs contend that they are not barred by the Eleventh Amendment from suing the Defendant in his official capacity because the relief being sought is prospective in nature. The Plaintiffs argue that the Defendant's obligation to pay did not arise until they submitted their claims and that had not occurred at the time they filed this lawsuit.[4]

The Defendant argues that the obligation to pay for the services accrued on the date the services were rendered, thereby categorizing the relief as retroactive and barred by the Eleventh Amendment.

■ "Official capacity suits brought in federal court against a state, state agencies, or state officials must overcome the immunity accorded the states under the Eleventh Amendment." *Yorktown Med. Laboratory, Inc. v. Perales*, 948 F.2d 84, 87 (2d Cir.1991); *see Edelman v. Jordan*, 415 U.S. 651, 664, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1973). The Eleventh Amendment permits a federal court to order prospective relief even if such relief does have some effect on the state treasury. *See Edelman*, 415 U.S. at 663–68, 94 S.Ct. 1347; *Association of Surrogates & Supreme*

---

4. The Plaintiffs were unable to submit their claims because the DSS had no mechanism in place for them to do so. However, pursuant to the Stipulation, the Plaintiffs received their pro- vider numbers and have been able to submit their claims since late October 1996 or early November 1996.

*Court Reporters v. New York,* 940 F.2d 766, 774 (2d Cir.1991). However, a federal court is deprived of jurisdiction to award retroactive monetary relief. *See id.*

In this case, the Plaintiffs seek reimbursement for the portable x-ray services rendered to QMBs *prior* to the date the parties executed, and the Court approved the Stipulation. This type of relief is properly categorized as retroactive relief, and, as such, the Court is barred from granting such relief by the Eleventh Amendment. *See New York City Health & Hospitals Corp. v. Perales,* 50 F.3d 129 (2d Cir.1995); *see also Edelman,* 415 U.S. at 663–68, 94 S.Ct. 1347; *Yorktown Med. Laboratory, Inc.,* 948 F.2d at 86 (citing *Tekkno Lab., Inc. v. Perales,* 933 F.2d 1093, 1097–98 (2d Cir.1991)). Thus, the Court grants the Defendant's motion for summary judgment on this issue.

### 2. Individual Capacity

■ The Plaintiffs argue that the Defendant, Brian Wing, was primarily responsible for the administration of the New York State Medicaid program. The Plaintiffs further assert that through his attorney, the Defendant entered into a Stipulation which imposed an injunction against him personally, and then subsequently agreed to pay for the Plaintiffs' attorney's fees.

The Defendant argues that he cannot be held responsible for the DSS's withholding of 20% co-insurance amounts before he became Acting Commissioner in April 1995. Moreover, Defendant maintains that the only "personal involvement" he had pertaining to this lawsuit while he was Acting Commissioner was through his attorney.

■ Personal involvement on the part of a state official being sued in his individual capacity is a prerequisite to an award of damages under 42 U.S.C. § 1983. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). An individual who occupies a supervisory position may be found personally involved by: (1) direct

participation in the infraction; (2) failure to remedy the wrong after learning of the violation through a report or appeal; (3) creation of the policy or custom under which the violation occurred, or allowing the policy or custom to continue; or (4) gross negligence in managing the subordinates whose conduct caused the violation. *See Wright,* 21 F.3d at 501.

Defendant Wing is neither alleged nor supported by the evidence to be a direct participant in the deprivation of the Plaintiffs' rights. While serving as Acting Commissioner of the DSS, Defendant Wing did not implement any regulation regarding portable x-ray services. Prior to his tenure, however, the DSS was aware that the state was required to pay the 20% co-insurance amounts for all Medicare services, including those services "not covered under Medicaid." (Def. Letter dated Sept. 23, 1997, Ex. A.) Believing that the state would not have to pay the co-insurance amount if there were questions regarding the credentials of the service provider, the DSS implemented a regulation which set forth qualifications that x-ray service providers had to meet before being eligible to receive the co-insurance amount. (*See* Def. Letter dated Nov. 23, 1997.) Under this regulation, the Plaintiffs were ineligible to receive the co-insurance amounts. While the DSS did enforce this regulation during the Defendant's tenure, there is no evidence that he was personally aware of any problems surrounding the enforcement of the regulation. *See Adams v. Galletta,* 966 F.Supp. 210, 212 (S.D.N.Y.1997) (stating that overall responsibility for the operation of a facility will not establish personal involvement). Furthermore, there was no evidence that such enforcement was grossly negligent or clearly contrary to the existing decisional law.[5] While presumably he did authorize the settlement of the prospective relief portion of this lawsuit, there is no other evidence of his personal involvement in the conduct complained of. *See Bomani v. Artuz,* No. 96 Civ. 4465, 1998 WL 82694, at *2 (S.D.N.Y. Feb.26,

---

**5.** While the Second Circuit in *New York City Health & Hosp. Corp. v. Perales* ruled that New York was required to pay health care providers the 20% co-insurance amounts for Medicare ser-

vices rendered to QMBs, the court did not address the state's ability to impose qualifications on providers. *See* 954 F.2d 854 (2d Cir.1992).

1998). The Court finds that the Plaintiffs have failed to establish the requisite personal involvement on the part of Defendant Wing, and therefore grants his motion for summary judgment on this issue.

## B. Portable X–Ray Services under the Medicaid Act

█ The Plaintiffs argue that they should be enrolled as Medicaid providers and reimbursed for the portable x-ray services rendered to Medicaid patients because a state's Medicaid plan must include "other laboratory and x-ray services." The Defendant asserts that while the state must provide for "other laboratory and x-ray services," the state has broad discretion in implementing qualifications that service providers must meet before they are eligible to be Medicaid providers. *See* 42 C.F.R. § 431.51(c)(2); *Nutritional Support Servs., L.P. v. Miller*, 830 F.Supp. 625, 627 (N.D.Ga.1993). The Defendant asserts that the state has exercised such discretion by allowing reimbursement for portable x-ray services only when rendered by a physician.

A state's Medicaid plan must "includ[e] at least the care and services listed in paragraphs (1) through (5) ... of section 1396d(a)." 42 U.S.C. § 1396a(a)(10)(A). Section 1396d(a)(xi)(3) specifically mentions "other laboratory and x-ray services." Other laboratory and x-ray services are defined as "professional and technical laboratory and radiological services (a) ordered and provided by or under the direction of a physician *or* other licensed practitioner ... or ordered by a physician but provided by [a] referral laboratory." 42 C.F.R. § 440.30.[6]

Under the plain language of the Medicaid Act, a state that chooses to participate in the Medicaid program must implement a medical assistance plan which at least provides for "other" x-ray services. The Medicaid Act itself does not mandate that these "other" x-ray services be rendered by a physician.[7] While New York State has the discretion to set reasonable qualification standards for x-ray providers, the state is obligated to provide recipients with certain minimum services, which include "other" x-ray services rendered by either a physician, licensed practitioner, or referral laboratory when ordered by a physician.[8] *See* 42 U.S.C. § 1396a(a)(10)(A); 42 U.S.C. § 1396d(a)(xi)(3); 42 C.F.R. § 440.30; *see also Granato v. Bane*, 74 F.3d 406, 408 (2d Cir.1996) (noting that states "must comply with the federal Medicaid statute and regulations"). The Plaintiffs are licensed practitioners [9] and referral laboratories [10] who perform "other," i.e., portable, x-ray services either in nursing homes or other private residences only when ordered by a physician. The Plaintiffs clearly fall within the federal statutory and regulatory framework. In light of this framework, to deny the Plaintiffs

---

**6.** The full text of the regulation states:
> Other laboratory and X-ray services means professional and technical laboratory and radiological services—
> (a) Ordered and provided by or under the direction of a physician or other licensed practitioner of the healing arts within the scope of his practice as defined by State law or ordered by a physician but provided by a referral laboratory;
> (b) Provided in an office or similar facility other than a hospital outpatient department or clinic; and
> (c) Furnished by a laboratory that meets the requirements of part 493 of this chapter.
> 42 C.F.R. § 440.30.

**7.** Clearly, Congress, if it chose to, could have limited a state's responsibility to pay for services rendered by physicians only, as exemplified in § 1396d(a)(5)(A).

**8.** Notwithstanding the Defendant's argument that the state regulation is entitled to deference and subject to the rational basis standard of review under an Equal Protection Clause analysis, the Plaintiffs in this case have not asserted a Constitutional claim but rather a § 1983 claim based on a denial of a statutory right created by the Medicaid Act.

**9.** A "licensed health care practitioner" is defined as "an individual (other than a physician) who is licensed or otherwise authorized by the State to provide health care services." 42 U.S.C. § 11151.

**10.** *See* 42 C.F.R. § 440.30; 42 C.F.R. § 494.1; 42 C.F.R. § 493.2. A "laboratory" is a facility used for the "examination of materials derived from the human body for the purpose of providing information for the diagnosis, prevention, or treatment or any disease or impairment of, or the assessment of the health of, human beings." 42 C.F.R. § 493.2.

enrollment as providers would unfairly discriminate against them and constitute an abuse of discretion. The Court, therefore, finds that the Plaintiffs are entitled to be enrolled as Medicaid providers and grants the Plaintiffs' motion for summary judgment.

## II. Contempt Motion

■ The Court has authority to enforce a clear and unambiguous stipulation agreement entered into by the parties through a contempt order. *See United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL–CIO,* 899 F.2d 143, 146 (2d Cir.1990); *Vari–O–Matic Mach. Corp. v. New York Sewing Mach. Attachment Corp.,* 629 F.Supp. 257, 258 (S.D.N.Y.1986). The Plaintiffs' motion for contempt is based on the Defendant's failure to perform under the Stipulation agreement. The Stipulation provides that:

3. The Deputy Commissioner of the New York State Department of Social Services in charge of Health and Long Term Care shall, on or about February 16, 1996 ... recommend to Defendant that Plaintiffs be provided a mechanism pursuant to which they may obtain the 20% Medicare co-insurance amounts, as set forth and defined in 42 U.S.C. §§ 1396a(a)(10)(E), 1396a(p)(1) [sic], for all portable x-ray services rendered by Plaintiffs to Qualified Medicare Beneficiaries prospectively as of February 12, 1996, as sought in their Application for a Preliminary Injunction.

The Defendant contends that pursuant to this Stipulation, it is only obligated to pay the 20% co-insurance amounts to those patients actually enrolled in the QMB program. The Defendant argues that to be found eligible to be a QMB, a patient must fill out an application to enroll in the QMB program so that the state can be assured that the individual does in fact meet the three criteria necessary. The Plaintiffs assert that the federal statute does not require enrollment and, therefore, the failure of an individual to fill out an application and become enrolled does not divest the individual of his or her QMB status.

■ Neither the federal statute nor federal regulation requires an individual to apply or be enrolled to obtain QMB status. QMB status is acquired once an individual meets the necessary requirements criteria [11] regardless of whether or not he or she is enrolled as such by the state. The state, however, is entitled to verify that individuals applying for benefits are in fact QMB qualified.[12] Thus, the Court finds that an individual must fill out an application and be enrolled as a QMB before receiving the 20% co-insurance payment. However, the Court also finds that pursuant to the Stipulation, once the Plaintiffs' patients apply and are found eligible and are enrolled, the Defendant is obligated to reimburse the Plaintiffs for the co-insurance payments from the time the patient was qualified as a QMB, whether or not enrolled, or from February 12, 1996, whichever is later.[13]

11. The three requirements are: (1) the individual must be entitled to hospital insurance benefits under Medicare Part A; (2) the individual's income cannot exceed a certain level which is established by the state; and (3) the individual's assets cannot exceed twice the maximum amount permitted under the supplemental security income program. *See* 42 U.S.C. § 1396d(p)(1).

12. The evidence submitted to the Court suggests that the Federal Health Care Financing Administration does require individuals to fill out an application at their state, county, or local medical assistance office before they can be classified as a QMB. (*See* Def. Letter dated Jan. 6, 1998 Exs. A & B.)

13. The Eleventh Amendment does not preclude the Court from interpreting the Stipulation, even if such interpretation will have an effect on the state treasury. Under the Stipulation, the Defen-

dant agreed to pay for services the Plaintiffs rendered beginning on February 12, 1996 prospectively and defined QMBs as those who were qualified or eligible to be regarded as QMBs, not an individual actually enrolled as such. Under this Order, to receive the 20% co-insurance payments for the patients who were QMB qualified but not enrolled, the Plaintiffs will carry the burden of establishing that each patient did in fact meet the three QMB requirements, especially the income and assets limitations, on or about February 12, 1996.

Additionally, the 1997 Amendment which clarified a state's liability for Medicare cost-sharing does not impact this decision for two reasons: (1) the parties *settled* the Defendant's liability regarding the 20% co-insurance amounts, and (2) the Court has concluded that the Medicaid Act does in fact require a state to include portable x-ray services in its medical assistance plan. *See*

The Plaintiffs contend that the Defendant should be found in contempt of the Stipulation because they have not been reimbursed for the portable x-ray services rendered to patients who meet the QMB criteria but have not applied for enrollment.[14]

 A contempt order is warranted only if the moving party establishes that "(1) the order the contemptor failed to comply with is clear and unambiguous, (2) the proof of non-compliance is clear and convincing, and (3) the contemptor has not diligently attempted to comply in a reasonable manner." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir.1995).

Whether the Defendant has diligently attempted to abide by the terms of the Stipulation is a very close question. In the Stipulation, the Defendant agreed to pay the 20% co-insurance amounts for all portable x-rays services the Plaintiffs rendered to QMBs after February 12, 1996. Nearly two years after the Stipulation was executed, only roughly 20% of the Plaintiffs' claims have been paid. At oral argument held on September 15, 1997, the Defendant was directed to provide the basis for the state's determination that most of the Plaintiffs' patients were not QMBs. Since that time, the Defendant has asserted several different bases for concluding that the individuals were not QMBs,[15] the last being that most of the patients had never applied for enrollment. This final assertion was not made until after the Plaintiffs conducted a sample of fourteen randomly selected patients and found that each met the three QMB requirements. While the contempt issue is close, the Court finds that the Defendant has made a good faith effort, albeit a rather slow one, to comply with the Stipulation, and therefore does not find the Defendant in contempt at this time.

### Conclusion

Therefore, after carefully examining the entire file in this matter, the submissions and arguments of counsel, and the applicable law, it is hereby

ORDERED that Defendant's motion for summary judgment is GRANTED with respect to Plaintiffs' retroactive reimbursement claim; it is further

ORDERED that Plaintiffs' summary judgment motion is GRANTED with respect to their claim regarding portable x-ray services under the Medicaid Act; and finally it is further

ORDERED that Plaintiffs' motion to hold Defendant in contempt is DENIED.

**IT IS SO ORDERED.**

---

Balanced Budget Act of 1997 § 4717(a)(2), (c), 42 U.S.C. § 1396a(n).

**14.** Some of the Plaintiffs' claims were rejected by the Defendant because the services rendered were not subject to reimbursement or there was a technical defect in the claim.

**15.** First, the Defendant argued that there was a distinction between "dual eligibles" and "pure QMBs." The Defendant then asserted that some individuals were not enrolled in Medicare Part A because they did not have the requisite number of work hours.