189 F.3d 273 (2nd Cir. 1999)
 K&A RADIOLOGIC TECHNOLOGY SERVICES, INC. and DIAGNOSTIC X-RAY SERVICES, INC., Plaintiffs-Appellees-Cross-Appellants,
v.
COMMISSIONER OF THE DEPARTMENT OF HEALTH OF THE STATE OF NEW YORK and BRIAN J. WING, individually, Defendants-Appellants-Cross-Appellees.
 Docket No. 98-7667(L), 98-7673(XAP)
August Term, 1998
 UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
 Argued June 15, 1999
Decided Aug. 19, 1999
 
 Appeal and cross-appeal from a judgment of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., Judge). One defendant-the New York State Commissioner of Health, who is named in his official capacity-appeals from the judgment insofar as it declares (1) that he is required to reimburse plaintiffs-two medical care providers-for portable X-ray services rendered to Medicaid patients, and (2) that the parties' court-approved stipulation requires him to make retroactive Medicare co-payments for services rendered by plaintiffs between the time that a patient becomes eligible as a "Qualified Medicare Beneficiary" and the time that the patient is "enrolled" by the State. Plaintiffs appeal from the judgment insofar as it grants partial summary judgment in favor of the other defendant-the State's former Acting Commissioner of Social Services, who is named in his individual capacity-based on a conclusion that he was not personally involved in the State's refusal to make Medicare co-payments for services rendered prior to February 12, 1996.
 Judgment vacated, as to Medicaid coverage for plaintiffs' services; judgment reversed, as to retroactive Medicare co-payments for services rendered prior to the State's determination of eligibility; judgment affirmed, as to liability of defendant in his individual capacity; cause remanded to the District Court with instructions to dismiss the claim for Medicaid coverage. [Copyrighted Material Omitted]
 PETER D. CARMEN, Mackenzie Smith Lewis Mitchell & Hughes, LLP, Syracuse, NY (David M. Garber, of counsel), for Plaintiffs-Appellees-Cross-Appellants.
 Victor Paladino, Assistant Attorney General of the State of New York (Dennis C. Vacco, Attorney General, Peter H. Schiff, Deputy Solicitor General, and Peter G. Crary, Assistant Attorney General, of counsel), for Defendants-Appellants-Cross-Appellees.
 Before: McLAUGHLIN and CABRANES, Circuit Judges, and CARTER,*. District Judge.
 JOSE A. CABRANES, Circuit Judge:
 
 
 1
 These appeals present several issues involving the entitlement of plaintiffs, two non-physician providers of portable X-ray services, to reimbursement for services rendered to patients who are eligible for various types of Medicaid assistance. Under Medicaid, medical care for financially needy individuals is subsidized by participating states, with partial reimbursement by the federal government. One aspect of Medicaid at issue here is a mandatory program through which participating states assist eligible, financially needy individuals with the patient's cost of participation in Part B of Medicare, the federal program that insures medical services for the elderly and the disabled, regardless of financial need.[1]
 
 
 2
 In this case, plaintiffs seek monetary damages and declaratory and injunctive relief against the Commissioner of the Department of Health of the State of New York, in his official capacity, and Brian J. Wing, former Acting Commissioner of the Department of Social Services of the State of New York, in his individual capacity.[2] The parties initially resolved some of plaintiffs' claims through a court-approved stipulation. Subsequently, the parties cross-moved for summary judgment, and plaintiffs moved for defendant to be held in contempt based on alleged non-compliance with the stipulation. The United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., Judge) granted both summary judgment motions in part, and denied the contempt motion. K&A Radiologic Tech. Servs., Inc. v. Wing, 13 F. Supp. 2d 264 (N.D.N.Y. 1998).
 
 
 3
 Defendant appeals from the judgment insofar as it declares that (1) he is required to reimburse plaintiffs for portable X-ray services provided to Medicaid patients, and (2) the stipulation requires him to make retroactive Medicare co-payments for services rendered by plaintiffs between the time when a patient becomes eligible as a "Qualified Medicare Beneficiary" ("QMB") and the time when the patient is "enrolled" as a QMB by the State. Plaintiffs cross-appeal from the judgment inasmuch as it grants partial summary judgment in favor of defendant in his individual capacity, based on a conclusion that he was not personally involved in the State's refusal to make Medicare co-payments for services rendered prior to February 12, 1996.
 
 
 4
 We conclude that (1) plaintiffs do not have an enforceable statutory right to be reimbursed for services provided to Medicaid patients, (2) defendant is not required to make retroactive Medicare co-payments for services rendered before a patient is determined to be eligible as a "Qualified Medicare Beneficiary," and (3) the District Court correctly determined that defendant could not be held liable for the State's earlier refusal to make Medicare co-payments prior to February 12, 1996. Accordingly, we affirm in part, reverse in part, vacate in part, and remand.
 
 
 5
 * The Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. §§1395-1395ggg, and the Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. §§1396-1396v, provide for federal and state government financing of medical care for the elderly, the disabled, and the financially needy.
 
 
 6
 Medicare, which is primarily funded by the federal government and is generally available to persons over 65 and persons with disabilities, consists of two parts. Under Part A, in which the enrollment of eligible persons is automatic, the federal government provides insurance for inpatient hospital care and related services. See42 U.S.C. §§1395c to 1395i-5. Under Part B, in which the enrollment of eligible persons is voluntary, coverage extends to other medical services, and the federal government pays medical providers 80% of the "reasonable charge," as determined by the Department of Health and Human Services ("HHS"). See id.§§1395j to 1395w-4. Patients enrolled in Part B are subject to "cost-sharing"-payment of monthly premiums, an annual deductible, and co-payments equal to 20% of the reasonable charge for services rendered, which is the portion not covered by the federal government.
 
 
 7
 Medicaid subsidizes medical care for financially needy individuals. Created and regulated by federal law, Medicaid is an elective program in force only in states that have chosen to participate. If a state chooses to participate, it must adopt a plan that conforms to requirements set forth in the Medicaid Act and federal regulations. See id. §1396a(a), (b). If a state plan is approved by HHS, the federal government reimburses the state government for 50% or more of its Medicaid expenditures. See id.§1396d(b).
 
 
 8
 When an individual is eligible for Medicaid but not Medicare (a "Medicaid-only patient"), Medicaid funds are used to pay 100% of the Medicaid reimbursement rate for the services provided. When an individual is a "Qualified Medicare Beneficiary" ("QMB")-that is, eligible for both Medicare and Medicaid (a "dual eligible"), or eligible for Medicare and financially needy, but not needy enough to be eligible for Medicaid (a "pure QMB")-a participating state must use Medicaid funds to defray the cost-sharing expenses of Medicare Part B.[3] See id. §§1396a(a)(10)(E), 1396d(p).
 
 
 9
 This case arose out of the State's refusal to pay for portable X-ray services provided by plaintiffs to Medicaid-only patients and QMBs. It is undisputed that plaintiffs, who do not employ physicians, fail to meet the State Medicaid plan's requirements for X-ray providers:
 
 
 10
 (d) Who can provide radiology services. Radiology services can be provided only by the following qualified practitioners and with the following limitations:
 
 
 11
 (1) a radiologist;
 
 
 12
 (2) a physician specialist may provide radiology services related and limited to the physician's area of specialty;
 
 
 13
 (3) a physician nonspecialist may provide radiology services as medically necessary, but such services must be limited to routine diagnostic chest X rays and/or diagnostic X rays for acute injuries; and
 
 
 14
 (4) dentists and podiatrists may provide radiology services related and limited to their scope of practice.
 
 
 15
 N.Y. Comp. Codes R. & Regs. tit. 18, §505.17(d). Plaintiffs contend that this regulation conflicts with federal requirements for state Medicaid plans, and that, even if the regulation is valid, they are qualified Medicare providers and therefore entitled at least to Medicare co-payments for services rendered to QMBs. Accordingly, plaintiffs filed suit on January 16, 1996, seeking a declaratory judgment that they are entitled to these payments, an injunction against future denial of the payments, and damages for past denial of the payments.
 
 
 16
 On February 14, 1996, the parties entered into, and the District Court approved, a stipulation requiring defendant to make the 20% Medicare co-insurance payments for services rendered by plaintiffs to QMBs on or after February 12, 1996 (the "Stipulation"). In the spring of 1997, the parties cross-moved for summary judgment, and plaintiffs moved for defendant to be held in contempt based on alleged non-compliance with the Stipulation.[4] According to the District Court, plaintiffs' remaining claims were (1) for monetary relief based on unpaid Medicare co-payments for services rendered to QMBs prior to February 12, 1996, and (2) for a declaratory judgment that plaintiffs are entitled to payment for services rendered to Medicaid-only patients.[5] See Wing, 13 F. Supp. 2d at 267. As discussed above, the District Court granted both summary judgment motions in part, and denied the contempt motion. This appeal and cross-appeal followed.
 
 II
 
 17
 We review a district court's entry of summary judgment de novo, applying the same legal standard as that employed by a district court. See, e.g., Bogan v. Hodgkins, 166 F.3d 509, 511 (2d Cir. 1999). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). Here, neither side contends that the case needs to be submitted to a fact-finder; instead, the parties challenge the District Court's conclusions on issues of law.
 
 
 18
 A. Plaintiffs' Claim for Co-Payments for Services Rendered Prior to February 12, 1996
 
 
 19
 First, the District Court concluded that defendant could not be held liable under 42 U.S.C. §1983 for co-payments based on services rendered to QMBs prior to February 12, 1996. The District Court found that defendant could not be sued in his official capacity, because relief under this claim would be retrospective. See Wing, 13 F. Supp. 2d at 267-68. States-and state officers, if sued in their official capacities for retrospective relief-are immunized by the Eleventh Amendment from suits brought by private citizens in federal court and, in any event, are not "persons" subject to suit under §1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 & n.10 (1989); Edelman v. Jordan, 415 U.S. 651, 664-68 (1974). The District Court then found that defendant could not be held liable in his individual capacity, because he did not have the requisite personal involvement in the State's refusal to make the co-payments at issue. See Wing, 13 F. Supp. 2d at 267-68. In their cross-appeal, plaintiffs challenge the latter determination (as to individual capacity), but not the former determination (as to official capacity).
 
 
 20
 Personal involvement of the defendant in the alleged deprivation is a prerequisite to recovery of damages under §1983. See, e.g., Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). The requisite personal involvement exists if, for example, the defendant (1) created or permitted the continuance of a policy that caused the alleged deprivation, (2) failed to remedy the alleged deprivation after learning of it, or (3) was grossly negligent in managing subordinates who caused the alleged deprivation. See, e.g., Spencer v. Doe, 139 F.3d 107, 112 (2d Cir. 1998).
 
 
 21
 Plaintiffs argue that defendant, as the State's chief Medicaid policymaker, permitted the continuance of a policy or practice pursuant to which they were denied Medicare co-payments despite the fact that they are qualified Medicare providers. For the requisite personal involvement to be found, however, it is not sufficient that such a policy or practice continued to exist during defendant's tenure; defendant must have known of it as well. In this connection, defendant submitted to the District Court an affidavit, from a Department of Social Services attorney responsible for Medicaid issues, stating that (1) "prior to the K&A suit, [defendant] was not called upon by his staff to deal with the policy" at issue, (2) after the case began, defendant (though personally named) was not informed by subordinates of the challenge to the policy, and (3) defendant's only subsequent involvement was his role in "expediting" compliance with the Stipulation.[6] In response, plaintiffs have not attempted to rebut this evidence; nor have they argued that defendant should be deemed to have had constructive knowledge of the policy, even before the Stipulation was entered into, by virtue of the filing of the complaint. Instead, plaintiffs maintain that defendant should not be permitted to avoid personal liability "by burying his head in the sand" and remaining ignorant of his department's policies. However, plaintiffs have presented no evidence of such willful blindness in this case, and, in light of the vast and complex nature of the Medicaid regime, we see no reason to assume that defendant's pre-Stipulation ignorance of the particular policy at issue resulted from willful blindness.
 
 
 22
 Plaintiffs' fallback position is that defendant knew of the policy at issue after the Stipulation was entered into, and yet rejected plaintiffs' subsequent claims for co-payments based on services rendered prior to February 12, 1996. To understand this argument, some further background is required. Pursuant to the Stipulation, defendant supplied plaintiffs with "provider numbers" so that they would be able to submit claims for Medicare co-payments for services rendered to QMBs on or after February 12, 1996-that is, so that plaintiffs could receive the payments covered by the Stipulation. Nevertheless, plaintiffs used these provider numbers to submit claims, not only for the services covered by the Stipulation, but for all services rendered to QMBs dating back to approximately 1988, long before defendant had any involvement with the State's Medicaid program. Plaintiffs now contend that defendant's post-Stipulation disallowance of these retroactive claims makes him personally liable for damages, notwithstanding his lack of involvement in the State's rejection of plaintiffs' earlier requests for payment based on the same services. We disagree. As a general proposition, we will not permit plaintiffs to avoid the consequences of a defendant's lack of personal involvement in a given deprivation by simply re-submitting the same claims after the defendant has become personally involved.
 
 
 23
 In sum, we hold that defendant did not have the requisite degree of personal involvement to be held liable in his individual capacity for Medicare co-payments based on services rendered to QMBs prior to the date set by the Stipulation, February 12, 1996. Accordingly, we affirm the District Court's judgment in favor of defendant on this claim.
 
 
 24
 B. Plaintiffs' Entitlement to "Enrollment" as Medicaid Providers
 
 
 25
 Second, the District Court concluded that plaintiffs were entitled to be "enrolled" as Medicaid providers. The District Court found that the applicable state regulation, N.Y. Comp. Codes R. & Regs. tit. 18, §505.17(d), which requires radiological services to be rendered by physicians, dentists, or podiatrists, conflicts with the Medicaid Act's minimum services requirement. Specifically, the District Court agreed with plaintiffs that the state regulation violated the federal requirement that a state's Medicaid plan must include coverage of, inter alia, "other laboratory and X-ray services," 42 U.S.C. §§1396a(a)(10)(A), 1396d(a)(3), which are defined in the governing federal regulation as
 
 
 26
 professional and technical laboratory and radiological services-
 
 
 27
 (a) Ordered and provided by or under the direction of a physician or other licensed practitioner of the healing arts within the scope of his practice as defined by State law or ordered by a physician but provided by referral laboratory;
 
 
 28
 (b) Provided in an office or similar facility other than a hospital outpatient department or clinic; and
 
 
 29
 (c) Furnished by a laboratory that meets the requirements of part 493 of this chapter.
 
 
 30
 42 C.F.R. §440.30. In his appeal, defendant challenges the determination that the Medicaid Act invalidates the state regulation. He also contends that, in any event, the Medicaid Act does not give medical providers, such as plaintiffs, an enforceable statutory right to "enrollment."[7]
 
 
 31
 We need not determine whether the state regulation is inconsistent with the minimum services requirement of the Medicaid Act, 42 U.S.C. §1396a(a)(10)(A), because we agree with defendant that even if a conflict exists, plaintiffs have no cause of action to enforce the federal requirement. Plaintiffs do not attempt to assert an implied right of action directly under the Medicaid Act; instead, they bring this action under 42 U.S.C. §1983. "Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws,'" Blessing v. Freestone, 520 U.S. 329, 340 (1997) (quoting 42 U.S.C. § 1983), but, "[i]n order to seek redress through § 1983..., a plaintiff must assert the violation of a federal right, not merely a violation of federal law," id. Accordingly, even if a defendant has violated one or more provisions of a federal statute such as the Medicaid Act, there will be no cause of action under §1983 unless a plaintiff can establish, inter alia, that "Congress ... intended that the provision in question benefit the plaintiff." Id.
 
 
 32
 In this connection, although enforcement of the minimum services requirement ordinarily will benefit certain medical providers such as plaintiffs, any such benefit is merely incidental, because the provision was meant to benefit Medicaid recipients, not those providers. The operative language requires participating states to "provide ... for making medical assistance [including other X-ray services] available ... to ... all individuals" meeting Medicaid's eligibility requirements. 42 U.S.C. §1396a(a)(10); cf. Nutritional Support Servs. v. Miller, 826 F. Supp. 467, 469-70 (N.D. Ga. 1993) (Medicaid recipients, not providers, are intended beneficiaries of Medicaid Act requirement, 42 U.S.C. §1396a(a)(23), that recipients be allowed to obtain services from any qualified and willing provider).
 
 
 33
 In fact, plaintiffs do not maintain that providers are intended beneficiaries of the minimum services requirement. Instead, they argue that they are enforcing the rights of providers under an entirely separate provision, which requires that a state's Medicaid plan must:
 
 
 34
 provide for claims payment procedures which (A) ensure that 90 per centum of claims for payment (for which no further written information or substantiation is required in order to make payment) made for services covered under the plan and furnished by health care practitioners through individual or group practices or through shared health facilities are paid within 30 days of the date of receipt of such claims and that 99 per centum of such claims are paid within 90 days of the date of receipt of such claims, and (B) provide for procedures of prepayment and postpayment claims review, including review of appropriate data with respect to the recipient and provider of a service and the nature of the service for which payment is claimed, to ensure the proper and efficient payment of claims and management of the program.
 
 
 35
 42 U.S.C. §1396a(a)(37) (emphasis added).
 
 
 36
 We find no merit in plaintiffs' argument. As the quotation indicates, subsection 1396a(a)(37) merely requires certain payment mechanisms to ensure prompt payment "for services covered under the plan." Plaintiffs' entire lawsuit arises from the fact that the services they provide are not covered under the State's plan. Plaintiffs, therefore, cannot demonstrate a violation of §1396a(a)(37), which arguably was intended to benefit them. Instead, plaintiffs can demonstrate, at best, a violation of the Medicaid Act's minimum services provision, §1396a(a)(10), which was only intended to benefit Medicaid recipients, and thus cannot be enforced under §1983 by medical providers such as plaintiffs. For this reason, we vacate the District Court's declaratory judgment that plaintiffs are entitled to be enrolled as Medicaid providers, and we remand the cause to the District Court with instructions to dismiss this claim.
 
 
 37
 C. Services Rendered to QMBs Prior to the State's Determination of Eligibility
 
 
 38
 Finally, the District Court concluded: "While the contempt issue is close, the Court finds that the Defendant has made a good faith effort, albeit a rather slow one, to comply with the Stipulation, and therefore does not find the Defendant in contempt at this time." Wing, 13 F. Supp. 2d at 271. Neither side contests this ultimate determination, but both take issue with the District Court's statements concerning defendant's obligations under the Stipulation.
 
 
 39
 Specifically, the District Court discussed the parties' dispute over plaintiffs' entitlement, under the Stipulation, to Medicare co-payments for services rendered to certain patients on or after February 12, 1996. In general, defendant had taken the position that co-payments were not required for certain patients on the ground that they were not QMBs. See id. at 271 & n.15. At first, defendant had maintained that dual eligibles did not qualify as QMBs; in other words, defendant had asserted that QMBs were only those individuals, referred to above as "pure QMBs," who were eligible for Medicare Part A and who met certain financial criteria but were not needy enough to qualify for Medicaid. More recently, defendant had relied on the fact that the patients had not applied for "enrollment" as QMBs.[8]
 
 
 40
 In determining whether defendant had complied with the Stipulation, the District Court looked to the terms of the Stipulation providing that
 
 
 41
 [t]he Deputy Commissioner ... shall ... recommend to Defendant that Plaintiffs be provided a mechanism pursuant to which they may obtain the 20% Medicare co-insurance amounts ... for all portable x-ray services rendered by Plaintiffs to Qualified Medicare Beneficiaries prospectively as of February 12, 1996....
 
 
 42
 Id. at 270. The District Court noted that, under 42 U.S.C. §1396d(p)(1),[9] "QMB status is acquired once an individual meets the necessary ... criteria regardless of whether or not he or she is enrolled as such by the state." Wing, 13 F. Supp. 2d at 270. The District Court reasoned, however, that the State is entitled to verify this eligibility, and therefore that no payment need be made before an individual QMB-a pure QMB or a dual eligible-is "enrolled" by the State. Nevertheless, in determining whether defendant was required to make retroactive payments for services rendered after eligibility but prior to enrollment of such persons, the District Court looked not to federal regulations, but to the terms of the Stipulation itself. The District Court concluded that, "pursuant to the Stipulation, once the Plaintiffs' patients apply and are found eligible and are enrolled, the Defendant is obligated to reimburse the Plaintiffs for the co-insurance payments from the time the patient was qualified as a QMB, whether or not enrolled, or from February 12, 1996, whichever is later." See id.
 
 
 43
 Although an individual clearly is a QMB under §1396d(p)(1) if he meets the eligibility requirements, we agree with defendant that, absent the Stipulation, he would only be required to make co-payments for services rendered after the month in which QMB status is first verified by the State. The statute defines "medical assistance" as payment for care and services "provided after the month in which the individual becomes [a QMB]," 42 U.S.C. §1396d(a), but it also provides that "[i]f an individual is determined to be a [QMB], such determination shall apply to services furnished after the end of the month in which the determination first occurs," id. §1396a(e)(8) (emphasis added). Furthermore, the federal Health Care Financing Administration ("HCFA"), the agency within the Department of Health and Human Services that is responsible for administering both Medicare and Medicaid, has issued the following guidance to the states:
 
 
 44
 Eligibility for payment of Medicare cost sharing is effective the first day of the month after the month in which QMB status is first determined. For example, if you determine an individual meets all eligibility requirements for QMB status on August 15, the effective date of eligibility for payment of premiums, deductibles, and coinsurance is September 1. ... Retroactive eligibility is precluded under this provision.
 
 
 45
 HCFA State Medicaid Manual §3490.8 (emphasis added).[10]
 
 
 46
 The District Court apparently concluded that the parties contracted around this no-retroactivity rule by stipulating that defendant would make co-payments for "all portable x-ray services rendered by Plaintiffs to Qualified Medicare Beneficiaries." See Wing, 13 F. Supp. 2d at 270. We disagree. There is no reason to believe that the parties considered the distinction between persons enrolled as QMBs and persons merely eligible to be enrolled as QMBs. To the contrary, it seems much more reasonable to believe that the parties simply agreed that Medicare co-payments would no longer be withheld on the ground that plaintiffs were not qualified providers under the State's Medicaid plan. Accordingly, we reverse the District Court's judgment insofar as it requires defendant to make co-payments for services rendered prior to a determination of QMB eligibility.[11]
 
 
 47
 We note, however, that a patient need not always complete an application in order to be enrolled as a QMB. For certain individuals, an application is required. As the District Court recognized, see 13 F. Supp. 2d at 270 n.12, defendant has submitted copies of an HCFA publication instructing individuals as follows: "If you already have Medicare Part A and think you qualify for ... QMB ... assistance, you must file an application for Medicaid at a State, county, or local medical assistance office - not a Federal office." This application requirement makes sense, because, even though states apparently have ready access to the Medicare rolls, they cannot be expected to determine, without an application, which individuals also fall into the financial category that makes them eligible as QMBs but ineligible for Medicaid. By contrast, for individuals already enrolled in Medicaid, states should be able, without undue difficulty, to cross-check the Medicare Part A rolls and thereby determine which individuals are QMBs.[12] Indeed, HCFA has issued the following directive to the states:
 
 
 48
 Determining QMB Status for Individuals Already Eligible for Medicaid. Because a large number of aged or disabled individuals eligible under the State plan can also be eligible as QMBs, ensure that such individuals, who wish to receive eligibility as QMBs, receive such eligibility as well as under other provisions in the State plan. Therefore, conduct a review of all recipients currently eligible under the State plan who are also entitled under Medicare Part A to determine whether they meet the eligibility requirements for QMB status. Where an individual does meet those requirements and has not elected to decline QMB eligibility, make him/her eligible as a QMB (in addition to his/her eligibility in another group) and notify him/her of his/her new status.
 
 
 49
 HCFA State Medicaid Manual §3490.5. Accordingly, although we hold that defendant is not required to make Medicare co-payments for services rendered to individuals before the State has determined their eligibility as QMBs, we also note that the State is required to make such determinations as soon as is practicable-in some cases, as illustrated above, even before the individual formally applies for or requests QMB "enrollment."
 
 III
 In sum, we hold:
 
 50
 (1) that the District Court correctly concluded that defendant was not personally involved in the State's failure to make Medicare co-payments for services rendered by plaintiffs to QMBs before February 12, 1996, and therefore that defendant cannot be held liable in his individual capacity for the non-payment of those claims;
 
 
 51
 (2) that, whether or not the District Court correctly concluded that the State's restriction of Medicaid X-ray providers conflicts with the Medicaid Act's minimum services provision, plaintiffs are not intended beneficiaries of that provision, and therefore have no cause of action under 42 U.S.C. §1983 for any violation of that provision; and
 
 
 52
 (3) that the District Court erred in concluding that the Stipulation requires defendant to make retroactive co-payments for services rendered after a patient meets the eligibility requirements for QMB status but before the State determines that the requirements have been met.
 
 Accordingly, we
 
 53
 (1) affirm the District Court's judgment in favor of defendant on plaintiffs' claim based on Medicare co-payments for services rendered prior to February 12, 1996;
 
 
 54
 (2) vacate the District Court's judgment in favor of plaintiffs on their claim of entitlement to reimbursement for services rendered to Medicaid-only patients, and remand to the District Court with instructions to dismiss this claim; and
 
 
 55
 (3) reverse the District Court's judgment insofar as it requires defendant to make retroactive co-payments for services rendered to patients prior to the State's verification of their status as QMBs.
 
 
 
 Notes:
 
 
 *
 The Honorable Robert L. Carter, of the United States District Court for the Southern District of New York, sitting by designation.
 
 
 [1]
 As explained below, the federal government pays only part of the costs of insurance under Medicare Part B, and if an eligible person opts to enroll in Part B, he ordinarily bears the remainder of those costs.
 
 
 [2]
 Plaintiffs originally named only Wing in his individual and official capacities. After responsibility for the State's Medicaid program was shifted to the New York State Department of Health in October 1996, plaintiffs were permitted to substitute the Commissioner of the Department of Health, in his official capacity, for Wing, in his official capacity. For convenience, we will refer to one defendant, distinguishing only between official and individual capacity.
 
 
 [3]
 In New York City Health & Hospitals Corp. v. Perales, 954 F.2d 854 (2d Cir. 1992), we held that participating states were required to make the full 20% Medicare co-payment for QMBs, even if the Medicare rate for the services exceeded the Medicaid rate. Congress subsequently amended the statute to provide clearly that states are exempted from mandatory Medicare cost-sharing to the extent such cost-sharing would cause the total payment for the medical service to exceed the Medicaid rate. See 42 U.S.C. § 1396a(n); McCreary v. Offner, 172 F.3d 76, 80 (D.C. Cir. 1999); Beverly Community Hosp. Ass'n v. Belshe, 132 F.3d 1259, 1263 (9th Cir. 1997). Neither side contends that this issue is relevant to these appeals.
 
 
 [4]
 In the interim, the District Court had denied plaintiffs' first contempt motion without prejudice to renewal after October 14, 1996.
 
 
 [5]
 It bears noting that the District Court made no reference to a claim for monetary relief based on past services rendered to Medicaid-only patients. Neither side has challenged this description of the outstanding issues.
 
 
 [6]
 We note that an affidavit from defendant himself would have been more compelling, but plaintiffs do not challenge the assertion that the affiant had personal knowledge of these matters.
 
 
 [7]
 Although this issue was fully briefed below, the District Court did not address it.
 
 
 [8]
 Plaintiffs argue on appeal that the District Court should have instructed defendant to make Medicare co-payments for services rendered to dual eligibles. It now appears, however, that defendant concedes a general responsibility to cover services rendered to pure QMBs and dual eligibles alike; he relies only on the lack of "enrollment" as a ground for non-payment.
 
 
 [9]
 42 U.S.C. § 1396d(p)(1) provides, in pertinent part, as follows:
 (1) The term "qualified medicare beneficiary" means an individual-
 (A) who is entitled to [Medicare Part A benefits],
 (B) whose income (as determined . . . for purposes of the supplemental security income program . . . ) does not exceed an income level established by the State consistent with [§ 1396d(p)(2)], and
 (C) whose resources (as determined . . . for purposes of the supplemental security income program) do not exceed twice the maximum amount of resources that an individual may have and obtain benefits under that program.
 
 
 [10]
 For ease of reference, we note that the HCFA State Medicaid Manual is available on the Internet at http://www.hcfa.gov/pubforms/pub45pdf/smmtoc.htm.
 
 
 [11]
 It is arguable that defendant lacks standing to appeal this issue because he is not sufficiently aggrieved by the District Court's order. Although the District Court found that defendant was obligated to make retroactive payments, it ultimately denied plaintiffs' motion to hold defendant in contempt because his compliance efforts had thus far been made in good faith. Ordinarily, a party cannot appeal a judgment in his favor to obtain review of findings he deems erroneous. See In re O'Brien, 184 F.3d 140, 141-42 (2d Cir.1999). Nevertheless, we think that the District Court's order is sufficiently adverse to defendant to confer Article III standing. If we did not address the issue now, defendant would be able to raise the issue in the future only by flouting the District Court's determination that it is obligated to make retroactive payments. In other words, defendant would be forced to choose between abandoning the issue or being held in contempt of court. We think this is a sufficient injury-in-fact to confer standing. Cf. In re Estate of Ferdinand Marcos Human Rights Litig., 94 F.3d 539, 544 (9th Cir. 1996) (non-party had standing to appeal an injunction where it was confronted with "the choice of either conforming its conduct to the dictates of the injunction or ignoring the injunction and risking contempt proceedings").
 
 
 [12]
 Apparently, all such individuals would be "dual eligibles."